| | | |
|---|---|---|
| MAXINE NELSON, | ) | |
| | ) | Davidson County Chancery |
| Plaintiff/Appellant | ) | No. 95-2626-III |
| | ) | |
| VS. | ) | Appeal No. |
| | ) | 01A01-9703-CH-00141 |
| PACESETTER CORPORATION, | ) | |
| | ) | |
| Defendant/Appellee | ) | |

**FILED**

November 7, 1997

Cecil W. Crowson
Appellate Court Clerk

## IN THE COURT OF APPEALS OF TENNESSEE
## MIDDLE SECTION AT NASHVILLE

### APPEAL FROM THE DAVIDSON COUNTY CHANCERY COURT
### AT NASHVILLE, TENNESSEE

### HONORABLE ELLEN HOBBS LYLE, CHANCELLOR

James L. Harris
2400 Crestmoor Rd.
Nashville, TN 37215
ATTORNEY FOR PLAINTIFF/APPELLANT

John R. Tarpley
Susan R. High-McAuley
Lewis, King, Krieg, Waldrop & Catron, P.C.
SunTrust Center
424 Church Street, Suite 900
P. O. Box 198615
Nashville, TN 37219
ATTORNEYS FOR DEFENDANT/APPELLEE

### AFFIRMED AND REMANDED

WILLIAM H. INMAN, SENIOR JUDGE

CONCUR:

HENRY F. TODD, PRESIDING JUDGE, MIDDLE SECTION
BEN H. CANTRELL, JUDGE

| | | |
|---|---|---|
| **MAXINE NELSON,** | ) | |
| | ) | **Davidson County Chancery** |

|                        |   |                        |
|------------------------|---|------------------------|
| **Plaintiff/Appellant** | ) | **No. 95-2626-III**    |
|                        | ) |                        |
| **VS.**                | ) | **Appeal No.**         |
|                        | ) | **01A01-9703-CH-00141** |
| **PACESETTER CORPORATION,** | ) |                   |
|                        | ) |                        |
| **Defendant/Appellee** | ) |                        |

## O P I N I O N

This is a suit for damages for an alleged retaliatory discharge brought pursuant to Tenn. Code Ann. § 50-1-304. As winnowed, the plaintiff alleges that she was discharged because she refused to participate in gambling activities which were illegal under Tenn. Code Ann. § 39-17-501.

The plaintiff was initially employed in November 1993. She resigned in August 1994 for reasons not relevant to this action and was reemployed in February 1995. She was discharged on August 2, 1995.

The defendant filed its answer denying the allegations of the complaint. It thereafter filed a motion for summary judgment which was granted. The plaintiff appeals and presents for review the propriety of summary judgment. Our review is *de novo* with no presumption of correctness of the trial court. *Carbide Corp. v. Huddleston,* 854 S.W.2d 87 (Tenn. 1993).

The defendant is engaged in the telemarketing business in various cities across the country. Its offices compete with each other in the production of income, with financial awards accruing to the winner. This competition involves various schemes, one of which was the '1995 World Series' designed to stimulate employee performance in the Nashville office.

The plaintiff's case focuses on this scheme. To describe it we defer to the plaintiff's testimony given in her discovery deposition:

> Q: Tell me what you understand the World Series Promotion to be. <u>This is the first time from November '93 to August '94 that you were employed at Pacesetter</u> [emphasis added].

> A: They passed out the information about it, and it did have the word "gambling" on it. It was a thing where you put in 5 or 10 or 20 [dollars] or whatever. The employees pooled their money. The people, the management people like Joe would of course make more money - - Mr. Kortcamp would make more money - - I'm sorry - - and the employees such

2

as I would make, I believe, half of it or something if we won.

And it was sort of a war. You know, they referred to it several times as a battle between one of the offices and another one. We would play off, and this was done through getting appointments and getting the sales and so forth, and whether we won or whether the Atlanta office won or whether the Omaha office won or one of the others. And I said, "I don't want to do this. This does not have anything to do with my job. I don't want to write a check." Well, they just kept on and kept on and kept on the first time.

And so I thought about it a couple of days - -

Q:   When you say "they" kept on and kept on, who is "they"?

A:   Trying to get me to write a check.

Q:   Who is "they"?

A:   Joe would say, "Have you put your money in?" Monica would say, "Have you put your money in? You're holding the group back. You're going to cause us not to make our money expectation." So Joe had profited 3,600.00 [dollars] from that particular one, and I went on - - and I think I put in $5, I believe. But I did it, you know - - I was not a happy camper about it. I went on and did it to get those people away from me and just to . . . .

Q:   Did you voice objections to it or did you just put in your $5?

A:   I put in my $5, but they had hounded me for several, several days before that. Finally, I just said - - you know, they think because I'm always saying, you know, or looking at somebody when they say the g - d - f or whatever they say - - and that's just only part of it; they said so many things. I finally said, "Well, here's the money." I didn't really follow the situation that much. I just at that point wanted people to leave me alone so I could go on and do my work.

Q:   Did you articulate that at the time?

A:   Yes. I told Joe, I said, "I don't really, you know, care about doing this." I told Monica, "I don't believe in this. This has nothing to do with my ability to do my work." But I did compromise the first time.

Q:   Did you feel like you were forced to participate?

A:   Yes, most definitely.

The plaintiff argues that the foregoing described activity constituted the offense of gambling under Tennessee law, and that her disapproval of it resulted in her discharge in violation of Tenn. Code Ann. § 50-1-304 which provides:

(a) No employee shall be discharged or terminated solely for refusing to participate in, or for refusing to remain silent about, illegal activities.

3

(b) As used in this section, "Illegal activities" means activities which are in violation of the criminal or civil code of this state or the United States or any regulation intended to protect the public health, safety or welfare.

(c) Any employee terminated in violation of subsection (a) shall have a cause of action against the employer for retaliatory discharge and any other damages to which the employee may be entitled.

(d)(1) . . . .

. . . . .

(2) . . . .

(e)(1) This section shall not be used for frivolous lawsuits, and anyone trying to do so is subject to sanction as provided in subdivision (e)(2).

(2) If any employee files a cause of action for retaliatory discharge for any improper purpose, such as to harass or to cause needless increase in costs to the employer, the court, upon motion or upon its own initiative, shall impose upon the employee an appropriate sanction, which may include an order to pay the other party or parties the amount of reasonable expenses incurred, including the reasonable attorney's fee.

Gambling, an illegal activity in Tennessee, is defined by statute:

**39-17-501. Definitions. -** The following definitions apply in this part, unless the context otherwise requires:
 (1) "Gambling" means risking anything of value for a profit whose return is to any degree contingent on chance, but does not include a lawful business transaction;
 (2) "Gambling bet" means anything of value risked in gambling;
 (3) "Gambling device or record" means anything designed for use in gambling, intended for use in gambling, or used for gambling;
 (4) "Lawful business transaction," as used in subdivision (1), includes any futures or commodities trading;
 (5) "Lottery" means the selling of anything of value for chances on a prize or stake; and
 (6) "Profit" means anything of value in addition to the gambling bet. [Acts 1989, ch. 591, § 1; 1990, ch. 945, § 1.]

The trial judge ruled that the promotional '1995 World Series' was not a gambling event as defined by statute. She also ruled that the plaintiff's position was terminated for a valid reason, which was uncontroverted by the plaintiff.

We pretermit the issue of whether the described promotional scheme was gambling within the purview of Tenn. Code Ann. § 39-17-501 as being unnecessary to a proper resolution of the case. Our focus is more properly directed to the issue of whether summary judgment was properly granted because the plaintiff presented no proof that she was not terminated for valid, non-discriminatory reasons, since she was an employee at will.

4

The Rule 56 motion was supported by the testimony of Joseph Kortkamp, whose deposition was taken by the plaintiff. He testified that the plaintiff was reemployed as manager of the rehash department [which follows up on contacts previously made]; that she worked about ten hours a week because "there wasn't anything to do"; that she was terminated because the position was terminated in Nashville; that the position was not reestablished, and "it didn't warrant having somebody full-time do that job"; that he offered the plaintiff "another job as a communicator if she'd like to stay on," and that she never responded.

The affidavit of Steve Jensen, an employee of the defendant, was filed in support of the motion. He testified that he was responsible for the rehash program; that the plaintiff was employed as rehash manager in February 1995; that she made net sales of less than $10,000.00 through July 1995, the second lowest in any office with a full-time manager; that it was apparent the position was not profitable and could not be continued; and that it was eliminated in August 1995, and no person replaced the plaintiff as rehash manager.

The plaintiff testified that Joseph Kortkamp told her that her position was being eliminated and no other reason was given or alluded to. She offered no proof whatever to refute the testimony of Kortkamp and Jensen that the position of rehash manager was being eliminated as a business decision.

In *Byrd v. Hall,* 847 S.W.2d 208 (Tenn. 1993), the Supreme Court explained that the issues relevant in the evaluation of a motion for summary judgment are (1) whether a factual dispute exists, (2) whether the disputed fact is material, and (3) whether the disputed fact creates a genuine issue for trial. When a properly supported motion is made, the burden shifts to the nonmoving party to set forth specific factors, not conclusions, by using affidavits or discovery materials establishing that there are indeed disputed material facts creating a genuine issue for trial.

The thrust of the plaintiff's response is that "she believed" she was terminated because of her opposition to the gambling or betting scheme. A mere belief does not create a genuine issue. *Newsom v. Textron Aerostructures,* 924 S.W.2d 409 (Tenn. Ct. App. 1995). In summary, the defendant's proof that the plaintiff's position, and hence

5

her job, was eliminated for a legitimate, nondiscriminatory reason is not controverted, and summary judgment was therefore proper. *Anderson v. Standard Register Co.,* 857 S.W.2d 559 (Tenn. Ct. App. 1993).

The judgment is affirmed at the costs of the appellant and the case is remanded.

_____
William H. Inman, Senior Judge

CONCUR:


_____
Henry F. Todd, Presiding Judge, Middle Section


_____
Ben H. Cantrell, Judge